IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG GALAXY S23 WITH IMEI 355552515307024 AND A SAMSUNG GALAXY S9 WITH IMEI 354824090187266 | Case No. 23-MJ-5171-MAS |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT**

I, Christopher Hubbuch, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search of cellular devices currently or previously assigned call number (859) 420-2472, (the "Devices"), further identified as a Samsung Galaxy S23 with International Mobile Equipment Identity (IMEI) 355552515307024 and a Samsung Galaxy S9 with IMEI 354824090187266. The Devices and their associated call number are currently the subject of a criminal investigation in the Eastern District of Kentucky. The devices to be searched and items to be seized are described in the following paragraphs and in Attachments A and B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March 2001.  I am currently assigned to the London Resident Agency, within the Louisville Division of the FBI.  I have received training from the FBI Academy in Quantico, Virginia, and elsewhere, which covered a variety of

investigative programs and techniques, including interviewing, report writing, and an overview of legal statutes and criminal laws. I have personally conducted and assisted in a variety of criminal investigations into violations of federal law, including narcotics crimes and bank robberies involving the extensive use of cellular telephone analysis, exploitation, and communications intercepts.

3.    At the FBI, I conduct criminal investigations, make arrests, and execute search and seizure warrants for violations of federal law. As such, I am a federal law enforcement officer authorized to investigate violations of federal law, and to apply for and execute warrants issued under the authority of the United States. I have more than ten (10) years of experience involving investigations of federal crimes involving the use of cellular telephones.

4.    The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that the Devices have been used to commit violations of 18 USC § 1028, Identification Document Fraud, 42 USC § 408(a)(7)(C), counterfeiting Social Security cards, and 18 USC § 1546(a), counterfeiting Alien Registration cards. There is also probable cause to search the Devices further described in Attachment A for evidence of these crimes as further described in Attachment B.

6.      The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.      The United States, including the FBI, is conducting a criminal investigation of an unidentified subject or subjects regarding possible violations of 18 USC § 1028 Identification Document Fraud, 42 USC § 408(a)(7)(C), counterfeiting Social Security cards, and 18 USC § 1546(a), counterfeiting Alien Registration cards.

8.      The requested warrant is sought in furtherance of the FBI's investigation of the use and user(s) of the Devices in furtherance of crimes involving the production, transfer, and use of fraudulent identification documents.

9.      The Federal Bureau of Investigation (FBI) at London, Kentucky, is investigating the Devices and the user(s) of the Devices which have been determined to be facilitating the production and delivery of false identity documents to undocumented immigrants, primarily from Mexico, in the Eastern District of Kentucky and presumably elsewhere. From my review of available records, a device using telephone number 859-420-2472 was documented in an FBI criminal case in 2016 as being associated with the distribution of fake identity documents.

10.     In February 2019, the immediate family member of a person acting as FBI Confidential Human Source #1 (CHS 1) was arrested in Kentucky for using false identification documents which presented the personal identifying information of another

person legally residing in the United States.  It was unknown to the legal United States resident that his/her identifying information had been used by CHS 1's immediate family member to obtain employment at a business located in the Eastern District of Kentucky. The immediate family member of CHS 1 came to law enforcement attention after the legal resident, whose identifying information had been used, filed a complaint with law enforcement in the Eastern District of Kentucky, after learning that his/her Social Security Number had been used to claim tax benefits by another individual. An investigation into the complaint resulted in the arrest of CHS 1's immediate family member whose true identity was positively determined by their fingerprints. Law enforcement determined that the individual was unlawfully in the United States. When he/she was arrested, CHS 1's family member told the arresting law enforcement agency that in 2016 he/she had purchased the identification documents through coordination with the telephone number 859-420-2472.  He/she stated that the purchase took place in person in Somerset Kentucky.  ~~The resulting criminal charges are still pending against~~ *MAS* ~~CHS 1's immediate family member~~. CHS 1 assisted law enforcement in hopes of mitigating the family member's criminal conduct although no promises have been made in this regard to CHS 1, especially as it relates to the family member's possible deportation from the United States.

11.     At my direction, CHS 1, who had also previously communicated with telephone number 859-420-2472 to obtain fake identity documents, contacted telephone number 859-420-2472 by text messages in Spanish on or about April 28, 2019.  CHS 1 and the user of telephone number 859-420-2472 discussed what types of identification

could be provided and the price. The following day, April 29, 2019, I spoke with CHS 1 who later made those text messages available to me for review. I have reviewed those text message with CHS 1 and determined the user of telephone number 859-420-2472 remained willing to sell CHS 1 a fake paper Social Security Card and plastic identification card containing false information. In response to CHS 1's text, the user of telephone number 859-420-2472 texted CHS 1 that he/she could obtain an ID for one-hundred seventy dollars ($170.00). CHS 1 also told me his/her spouse also previously obtained fake identification documents several years ago by contacting telephone number 859-420-2472.  These documents were delivered to CHS 1's spouse at Somerset, Kentucky, which is in the Eastern District of Kentucky.

12.    I subsequently requested and obtained subscriber and call/text toll records for telephone number 859-420-2472 by subpoena to service provider T-Mobile for the time-period from January 1, 2019, to December 11, 2019. I have reviewed those records which revealed telephone number 859-420-2472 is a mobile telephone number subscribed to by "Luis Blanco", date of birth July 3, 1981, with no further information available. According to the subscriber information, the Device telephone number 859-420-2472 was assigned IMSI 310260549684052. The Device using telephone number 859-420-2472 has been active since on or about November 6, 2011, and payments for service provided to the Device using telephone number 859-420-2472 have all been made in cash within the scope of the records I received and reviewed.

13.    I have reviewed call and text records for telephone number 859-420-2472 and observed a consistent pattern of short duration contacts with many numerous

different telephone numbers which I believe are patterns associated with the request and subsequent delivery of fake identity documents. Telephone number 859-420-2472 was also in contact with telephone numbers in Veracruz, Mexico, during the duration of the call and text records I reviewed.

14.     From review of the call/text toll records, I also determined telephone number 859-420-2472 was in frequent contact with telephone number (502) 224-4000 throughout the duration of the records. I searched available FBI records and located an FBI intelligence product from 2015 which identified telephone number (502) 224-4000 as being used by a Hispanic male who forged driver's licenses, green cards, work authorization cards, passports, and other documents.

15.     I subsequently requested and obtained subscriber and call and text records for telephone number (502) 224-4000 by subpoena to service provider AT&T for the time-period from January 1, 2019, to December 11, 2019. I have reviewed those records which identified telephone number (502) 224-4000 as a pre-paid AT&T, doing business as Cricket Wireless, wireless device subscribed to by "Jaime Garcia", 7203 Patrick Henry Court, Apartment 1, Louisville, Kentucky. At this time, I have no additional information about Jaime Garcia.

16.     On January 29, 2020, CHS 1 sent a text message to telephone number 859-420-2472 at my direction, inquiring about purchasing a false identification card (plastic) as well as a false Social Security card (paper). The unidentified subject utilizing telephone number 859-420-2472 advised CHS 1 to call the number.  The proceeding phone call, although occurring in Spanish, was consensually recording in the presence of

law enforcement agents. Following the call, CHS 1 provided a synopsis of the call to law enforcement agents.

17.    The unidentified subject advised CHS 1 that "paper" and "plastic ID", i.e., a Social Security card and an ID, would cost one-hundred eighty dollars ($180.00). However, the unidentified suspect advised CHS 1 that did he not have any identifying information to provide for use by CHS 1 at this time. I understood this to mean that the unidentified subject is not currently in possession of identifying information which would appear valid if checked because it belongs to a lawful citizen. The unidentified subject advised CHS 1 to text a photograph of himself/herself along with the desired personal identifying information to the unidentified subject by text message. The unidentified subject advised CHS 1 that if he/she could provide personal identifying information, the unidentified suspect could have the documents in question ready the next day. CHS 1 and the unidentified subject agreed that, when the identifying information was provided and the false documents produced, Somerset, Kentucky, would be a good location to exchange money for the false identification documents. The unidentified subject later indicated to CHS 1 that he/she could take his time in acquiring the identifying information, and the unidentified subject could oblige him once he did. My understanding of the unidentified subject's position that time is not of the essence for the acquisition of identifying information is that false identification documents are being produced habitually, either by the currently unidentified subject or another person or persons and are readily available to the unidentified subject.

18.    On February 3, 2020, CHS 1 contacted telephone number 859-420-2472, at my direction, by text and inquired about purchasing the identity documents they previously discussed. The unidentified subject asked CHS 1 what state he/she wanted the ID to come from. The unidentified subject told CHS 1 the best ID he makes is from Tennessee. CHS 1 agreed. I provided CHS 1 with a Social Security Number to use.  CHS 1, at my direction, sent a photograph of him/herself to telephone number 859-420-2472 with the Social Security Number I provided and an alias name and date of birth. The unidentified subject asked CHS 1 if CHS 1 would come to Lexington, Kentucky, to exchange cash for the identity documents, stating the price would be one-hundred twenty dollars ($120). CHS 1 agreed.

19.    On February 5, 2020, CHS 1 purchased a fraudulent Tennessee identification card and Social Security card for one-hundred twenty dollars ($120) from the user of telephone number 859-420-2472. These documents contained the information CHS 1 sent to telephone number 859-420-2472 two days prior and included an address in Tennessee previously unknown to me or CHS 1. This purchase occurred at Lexington, Kentucky. Special Agents of the FBI and the Social Security Administration Office of the Inspector General (SSA-OIG) conducted physical surveillance of this purchase. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 1 in exchange for cash. These fake identification documents were recovered from CHS 1 and are maintained as evidence by the FBI.  The conversation between CHS 1 and the unidentified male occurred in Spanish and was recorded.  I debriefed CHS 1 after the purchase and he/she told me the

unidentified male sold a number of fake Tennessee IDs to a Hispanic male who works in Monticello, Kentucky, during the Summer of 2019. The conversation between the unidentified subject and CHS 1 did not provide me additional information about the true identity of the unidentified subject.

20.    On February 5, 2020, physical surveillance did identify the vehicle driven by the unidentified male subject. I requested, received, and reviewed the Kentucky vehicle registration information for the vehicle driven by the unidentified subject which is registered to "Teodoro Leal Paez" at address 148 Surfside Drive #3, Lexington, Kentucky. The Social Security Number listed on the vehicle registration was determined by the SSA-OIG to be invalid. The unidentified male subject's vehicle was later located near the identified Surfside Drive address. The true identity of the currently unidentified male user of telephone number 859-420-2472 remains unknown to me at this time.

21.    On January 28, 2020, I requested and was granted a search warrant for historical cell site location information for telephone number 859-420-2472. I received that information from T-Mobile on or about February 7, 2020. I have reviewed that data. From the data, I have learned telephone number 859-420-2472 travels frequently between Lexington, Kentucky, and Louisville, Kentucky. The Device using telephone number 859-420-2472 was most frequently located in the vicinity of Surfside Drive in Lexington, Kentucky. Additionally, telephone number 859-420-2472 received or initiated almost eighty thousand (80,000) calls and text messages during the time-period from April 1, 2019, to January 24, 2020.

22.     On February 19, 2020, Magistrate Judge Hanly A. Ingram, Eastern District of Kentucky, authorized a sealed Search and Seizure warrant for the Device using telephone number 859-420-2472 (6:20-MJ-6011-HAI). The warrant was executed, and precision location / GPS data was collected for the Device using telephone number 859-420-2472 from the period February 19, 2020, to April 3, 2020.  This data was used to track the Device using telephone number 859-420-2472 while conducting physical surveillance. Physical surveillance was able to confirm the locations where the user of the Device using telephone number 859-420-2472 visited. During that time frame, the investigation was not able to definitively locate the exact apartment where the user was staying in Lexington, Kentucky.

23.     The FBI developed another CHS (hereinafter "CHS 2") who was able to purchase fake identity documents from the user of the Device using telephone number 859-420-2472. On May 15, 2020, CHS 2 purchased a fraudulent Tennessee identification card and Social Security card for one-hundred twenty dollars ($120) from the user of telephone number 859-420-2472 at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

24.     On April 1, 2021, CHS 2 purchased a fraudulent U.S. Government Permanent Resident identification card and Social Security card for one-hundred twenty dollars ($120) from the user of telephone number 859-420-2472 at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late

thirties, providing the identification documents to CHS 2 in exchange for cash. According to CHS 2 and from surveillance video which I have reviewed, I believe this is the same person from the previous evidence purchase. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

25.    On March 21, 2022, CHS 2 placed a consensual recorded telephone call to the user of telephone number 859-420-2472. The conversation occurred in Spanish. The CHS and the user discussed if the user could still make IDs, which the user indicated he could. No evidence purchase was conducted based on this contact.

26.    On July 21, 2022, CHS 2 placed a consensual recorded telephone call to the user of telephone number 859-420-2472. The conversation occurred in Spanish. The CHS and the user discussed if the user could make IDs for some of CHS 2's relatives, which the user indicated he could. Specifically, the CHS told me the user said he could make Green Cards and Social Security cards. No evidence purchase was conducted based on this contact. According to the CHS, the user of the telephone sounded different than the previous user.

27.    On November 22, 2022, CHS 2 placed a consensual recorded telephone call to the user of telephone number 859-420-2472. The conversation occurred in Spanish. The CHS told me they discussed if the user could still make IDs for some of CHS 2's family members, which the user indicated he could. Specifically, the CHS told me the user said he could make Green Cards and Social Security cards. No evidence purchase was conducted based on this contact. According to CHS 2, the user of the telephone sounded different than the previous user, possibly younger.

28.     On January 11, 2023, CHS 2 spoke to the user of telephone number 859-420-2472 and sent the user of telephone number 859-420-2472 six digital photographs and corresponding names and dates of birth. The user of telephone number 859-420-2472 agreed to sell CHS 2 a Social Security card and Green Card for each person for a total of $720. I have reviewed the text messages and photographs sent by CHS 2 to telephone number 859-420-2472 and determined this information was included in identification cards purchased by CHS 2 from the user of telephone 859-420-2472 the next day.

29.     On January 12, 2023, CHS 2 purchased six (6) fraudulent U.S. Government Permanent Resident identification cards and six (6) Social Security cards for seven-hundred twenty dollars ($720) from the user of telephone number 859-420-2472 at Lexington, Kentucky. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

30.     On January 18, 2023, I requested and received updated records from T-Mobile for telephone number 859-420-2472. Telephone number 859-420-2472 remains subscribed to by "Luis Blanco" and has the same IMSI. Further, telephone number 859-420-2472 continued to demonstrate a high volume of calls and texts. For the time-period October 1, 2022, to January 17, 2023, there were approximately thirty-four thousand nine-hundred calls and texts.

31.     On March 13, 2023, Eastern District of Kentucky Magistrate Matthew A. Stinnett, Lexington, Kentucky, authorized a forty-five (45) day pen register and precision

location search warrant for the Device using telephone number 859-420-2472 (5:23-MJ-5079-MAS). This search warrant was served on T-Mobile and began collecting information on March 13, 2023.  This authority was extended on April 24, 2023, by Magistrate Stinnett for an additional fourteen (14) days.

32.     On March 23, 2023, a uniformed Lexington Police Department officer was provided with real-time precision GPS location for the Device using telephone number 859-420-2472. The Device using telephone number 859-420-2472 was located at Malone's restaurant in Lexington, Kentucky. The uniformed officer located a black GMC Terrain parked at the restaurant bearing Kentucky License Plate E9A 642. I determined this vehicle was registered to TOMAS LEAL-PAEZ and CELESTINO BARRERA on January 23, 2023, at 2604 El Patio Place, Apartment #311, Louisville, Kentucky. This address is consistent with where the Device using telephone number 859-420-2472 has been located regularly over the last three (3) weeks. The SSA-OIG advised determined the Social Security Numbers associated with TOMAS LEAL-PAEZ and BARRERA used to register the vehicle do not belong to either.

33.     On March 28, 2023, an FBI Task Force Officer and a Lexington Police Department uniformed patrol officer conducted a ruse at 168 Surfside Drive, knocking on each apartment door. The building was determined to consist of eight (8) individual apartment units. Only one person in Apartment #2 responded to the ruse and was not the subject of investigation. The same white GMC Terrain bearing Kentucky license plate 218 ZVW was parked at the apartment complex behind the building marked "168". The TFO and officer then went to the apartment complex rental office and inquired about

tenants in Building 168 and about the GMC Terrain. Investigation determined the apartment complex parking sticker in the window of the GMC Terrain, "1535", is associated with 168 Surfside Drive, Apartment 7. Further, the apartment is currently rented by an individual using the name "MARIO REYES", who provided an International Driver's Permit to the apartment complex for identification. The permit identified MARIO REYES having date of birth July 3, 1981. An apartment complex manager was shown a surveillance photograph of the subject I obtained from a prior controlled purchase of fake identification documents by CHS 2. The manager said the photograph looked like MARCOS REYES, MARIO REYES' brother who stayed in Apartment 7 with MARIO REYES at one time, but she had not been him there for about six (6) months. MARCOS REYES provided the apartment complex a Mexican Consular Identification which indicated a date of birth October 19, 1984. From my investigation, I believe MARCOS REYES and MARIO REYES are other alias names used by subjects of this investigation.

34.    From my review on April 24, 2023, of ongoing GPS ping data collection authorized by the Eastern District of Kentucky, the Device using telephone number 859-420-2472 stopped visiting the Surfside Drive apartments entirely after March 30, 2023, and has been primarily located at El Patio Apartments, Louisville, Kentucky. I believe this was prompted by the law enforcement inquiry on March 28, 2023.

35.    On April 12, 2023, the user of the Device using telephone number 859-420-2472 traveled to meet CHS 2 at Richmond, Kentucky, in a black GMC Terrain bearing Kentucky License Plate E9A 642. At my direction and oversight, the CHS 2 purchased

two (2) fraudulent U.S. Government Permanent Resident identification cards and two (2) Social Security cards for two-hundred forty dollars ($240) from the user of the Device using telephone number 859-420-2472 at Richmond, Kentucky. The precision location information from the on-going search warrant which I have reviewed confirmed the Device using telephone number 859-420-2472 traveled from Louisville, Kentucky, to Richmond, Kentucky, in conjunction with the purchase of the fake identity documents on April 12, 2023. The physical surveillance observed an unidentified Hispanic male, possibly in his late thirties, providing the identification documents to CHS 2 in exchange for cash. According to CHS 2 and from surveillance video which I have reviewed, I believe this is the same person from the previous evidence purchase in January 2023. These fake identification documents were recovered from CHS 2 and are maintained as evidence by the FBI.

36.     On April 21, 2023, I conducted physical surveillance at 2604 El Patio Place, Louisville, Kentucky. I personally observed a 2013 black GMC Terrain parked in the back of the apartment building marked "2604". I determined that vehicle registered to Cellestino Barrera at 2604 El Patio Place, Apartment 311, Louisville, Kentucky. My research determined of the Social Security Number used to register the vehicle does not belong to Barrera. I observed the structure to be a three-story apartment building with one lobby entrance. While conducting investigation at 2604 El Patio Place on April 21, 2023, I noted the Device using telephone number 859-420-2472. Further, I located a mailbox in the lobby of building 2604 which stated "C.Barrera 311".  From prior surveillance, a black GMC Terrain bearing Kentucky License Plate E9A 642 was the vehicle used by the

user of the Device using telephone number 859-420-2472 to purchase fake identity documents and was determined to be registered to CELESTINO BARRERA and TOMAS LEAL-PAEZ at 2604 El Patio Place, Apartment 311, Louisville, Kentucky.

37.     On April 24, 2023, an FBI Agent obtained a precise GPS location and digital photographs of the door to 2604 El Patio Place, Apartment 311, Louisville, Kentucky. I have compared the Agent's GPS location and a large sampling of the precision location pings collected for the Device using telephone number 859-420-2472; specifically, overnight. I believe the precision data and Agent's GPS location view of the door to Apartment 311 match.

38.     On April 24, 2023, the Eastern District of Kentucky authorized a warrant extending the collection of pen register and precision location data for the Device using telephone number 859-420-2472. That warrant was served on T-Mobile USA, Inc. on April 24, 2023.  T-Mobile USA, Inc. refused to comply with the warrant and indicated the IMSI was not correct.  I reviewed the on-going pen register and precision location warrant data and learned that the Device using telephone number 859-420-2472 was located at a T-Mobile USA, Inc. retail store in Louisville, Kentucky, at approximately 1 p.m. on April 24, 2023. At about that time, the pen register data indicated the Device using telephone number 859-420-2472 had a change in its IMSI to 310260601533697. I initially believed the International Mobile Equipment Identity (IMEI) for the Device using telephone number 859-420-2472 did not change from my review of the pen register records. I later learned on April 25, 2023, pursuant to a subpoena to T-Mobile USA, Inc. that the user also transferred telephone number 859-420-2472 to a new device bearing

IMEI 3555525153070208, according to T-Mobile USA, Inc. records. The previous IMEI was 354824090187260, according to T-Mobile USA, Inc. records. I believe this indicates the user of telephone number 859-420-2472 changed to a new wireless telephone. The subscriber to the new Device is still Luis BLANCO. Further, I subpoenaed call and text records on April 25, 2023, for telephone number 859-420-2472 from April 23, 2023, to April 25, 2023. From my review of those records, the Device continued to call some of the same telephone numbers as the previous cell phone using telephone number 859-420-2472, and I believe there is probable cause to believe the same user is in possession of the Device. I also know from my training and experience that wireless telephone users will have their service providers, such as T-Mobile USA, Inc., transfer contents of a user's telephone to the new wireless telephone when they purchase a new device. In some cases, users will also keep their original device.

39.     From my review of the pen register data for telephone number 859-420-2472, the IMEIs for the Devices using telephone number 859-420-2472 are 354824090187266 and 355552515307024. I know from my training and experience that an IMEI can identify the make and model of a mobile device. On April 26, 2023, I conducted an open-source Internet query for both IMEIs. I learned that IMEI 354824090187266 is associated with a Samsung Galaxy S9, Model SM-G960U, and IMEI 355552515307024 is associated with a Galaxy S23, Model SM-S911U.

40.     On April 28, 2023, at approximately 9:00 a.m., Special Agents and Task Force Officers of the FBI, SSA-OIG, and DHS-Immigration and Customs Enforcement located and arrested the user of telephone number 859-420-2472 at 2604 El Patio Place,

Apartment 311, Louisville, Kentucky, pursuant to a criminal complaint in the Eastern District of Kentucky, issued by Magistrate Matthew A. Stinnett on April 25, 2023.  Upon execution of the arrest, the apartment was determined to be occupied by four undocumented immigrants from Mexico; one of whom was the user of telephone number 859-420-2472. This arrest identification was made by my comparison of surveillance photographs and positive identification of the person who sold fake identity documents to CHS 2 at Richmond, Kentucky, on April 12, 2023. The person arrested provided a Mexican passport and several other identification documents indicating his name is TOMAS LEAL-PEAZ, who I have described in paragraph 29.  Both the white GMC Terrain used by TOMAS LEAL-PAEZ on January 12, 2023, and the black GMC Terrain used by TOMAS LEAL-PAEZ were observed in the parking lot to 2604 El Patio Place upon approach to arrest him.

41.    While making entry to conduct the arrest, TOMAS LEAL-PAEZ locked himself in his bedroom. I know this is TOMAS LEAL-PAEZ's bedroom because he told Special Agents where his personal identification was located within the bedroom room and retrieved clothing and shoes from the floor of the bedroom and within a closet in that bedroom. From my observations, the bedroom had only one bed and appeared to have only one occupant, TOMAS LEAL-PAEZ.

42.    In plain view in TOMAS LEAL-PAEZ's bedroom, Special Agents observed two cell phones on the windowsill at the head of the bed. Special Agents compared pictures from the Internet of a Samsung Galaxy S9 and observed from their

own personal experience that one of the phones was a Samsung Galaxy S9 matching the

description of the Device.

43.    From my review of pen register data for telephone number 859-420-2472,

the IMEIs for the devices which have used telephone number 859-420-2472 are

354824090187266 and 355552515307024. I know from my training and experience that

an IMEI can identify the make and model of a mobile device. On April 26, 2023, I

conducted an open-source Internet query for both IMEIs. I learned that IMEI

354824090187266 is associated with a Samsung Galaxy S9, Model SM-G960U. Based

on this, I believe this is the Device – the Samsung Galaxy S9, Model SM-G960U – which

used telephone number 859-420-2472 prior to April 24, 2023.

44.    On April 28, 2023, United States Magistrate Judge Regina S. Edwards,

Western District of Kentucky, authorized a search and seizure warrant for the Device

described in Paragraph 42 (3:23-mj-274), which is a Samsung Galaxy S9 cell phone

located plain view in TOMAS LEAL-PAEZ's bedroom but not on or near him when he

was arrested. The warrant was specific to and only authorized law enforcement personnel

to seize the device, not search it. This device was seized pursuant to that authority and is

maintained as evidence. After seizure and upon power cycling this cell phone, I

determined the device to be unlocked and its IMEI to be 354824090187266, which I

know is the device previously assigned telephone number 859-420-2472 prior to April

24, 2023. Therefore, I believe this is the device used to communicate with CHS 2 on

April 12, 2023, and on January 12, 2023, and that it contains evidence of the crimes

described herein.

45.     I have learned from subpoenas to T-Mobile that telephone number 859-420-2472 was using a device assigned IMEI 354824090187266 from as early as April 2, 2020, continuing to April 24, 2023. Based on the foregoing, I believe the Samsung Galaxy S9 seized from TOMAS LEAL-PAEZ's room on April 28, 2023, is the same device which was using telephone number 859-420-2472 and was communicating with CHS 2 from May 2020 through April 2023 to coordinate and purchase fake identity documents and IDs.

46.     While conducting the arrest of TOMAS LEAL-PAEZ at 2604 El Patio Place, Apartment 311, Louisville, Kentucky, TOMAS LEAL-PAEZ, FBI Agents encountered TOMAS LEAL-PAEZ coming out of the bathroom which was located inside his locked room and only accessible from the inside of his room. While in that bathroom, an FBI Special Agent observed two cell phones in the small bathroom garbage can. These two cell phones were seized incident to the arrest of TOMAS LEAL-PAEZ, as they were within his reach upon arrest. Several phone calls were also made by FBI Special Agents to telephone number 859-420-2472. The calls went straight to voice mail.  Further, one of the cell phones in the bathroom garbage can was a Samsung Galaxy S23 with IMEI 355552515307024 printed on the exterior.  I know from my investigation this is the new cell phone obtained by the user of telephone number 859-420-2472 on April 24, 2023, at a T-Mobile store. I believe the fact that the cell phone was turned off and thrown in a garbage can further supports probable cause to believe it contains evidence of the crimes described herein.

47.     The Devices are currently located in an FBI secure evidence storage room at the FBI London Resident Agency, London, Kentucky.

## TECHNICAL TERMS

1.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking

directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and

presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet

smaller than a notebook, that is primarily operated by touching the screen.

Tablets function as wireless communication devices and can be used to

access the Internet through cellular networks, 802.11 "wi-fi" networks, or

otherwise.  Tablets typically contain programs called apps, which, like

programs on a personal computer, perform different functions and save data

associated with those functions.  Apps can, for example, permit accessing

the Web, sending and receiving e-mail, and participating in Internet social

networks.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a

unique numeric address used by computers on the Internet.  An IP address

is a series of four numbers, each in the range 0-255, separated by periods

(e.g., 121.56.97.178).  Every computer attached to the Internet computer

must be assigned an IP address so that Internet traffic sent from and

directed to that computer may be directed properly from its source to its

destination.  Most Internet service providers control a range of IP

addresses.  Some computers have static—that is, long-term—IP addresses,

while other computers have dynamic—that is, frequently changed—IP

addresses.

h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

48.  Based on my training and experience, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, global positioning system, personal digital assistant, tablet, and be utilized to access the Internet using Internet Protocol addresses.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Devices, where the Devices have been, what services the Devices have accessed, how the Devices accessed these services, storage of images and videos, messaging services, Internet searches, etc.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

49.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, when people transition to new phones, there are applications readily available to transfer the stored content, settings and histories located on the original phone to the new phone.  Many new phones also make use of online storage for synching them with other digital devices used by the phone owner.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

50.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

i.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

j.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

k.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

l.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored

on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

m. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

n. I know that when an individual uses an electronic device to communicate with a co-conspirator(s), the individual's electronic device will generally serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

51.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

## CONCLUSION

52.    Based on the foregoing, I believe there is probable cause to believe the Devices, namely a Samsung Galaxy S23 with International Mobile Equipment Identity (IMEI) 355552515307024 and a Samsung Galaxy S9 with IMEI 354824090187266, contain evidence of violations of violations of 18 USC § 1028, Identification Document Fraud, 42 USC § 408(a)(7)(C), counterfeiting Social Security cards, and 18 USC § 1546(a), counterfeiting Alien Registration cards.

## AUTHORIZATION REQUEST

53.    Based on the foregoing, I request the Court issue the proposed search warrant for the Devices described in Attachment A for evidence described in Attachment B.

Respectfully submitted,

/s/ Christopher A. Hubbuch

Christopher A. Hubbuch
Special Agent
Federal Bureau of Investigation

Sworn to/attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 and 41(d)(3) by telephone and email, reliable electronic means, on May 8th , 2023.

HON. MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY